UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
FEDERICO PIGNATELLI                                           Case No.

         Plaintiff,    Jury Trial Demanded

- against -

               **COMPLAINT**

WALLY SHAYKHOUN and IMMORTAL MODEL
MANAGEMENT.

         Defendants.

------------------------------------------------------------------X

  Plaintiff, Federico Pignatelli ("Pignatelli"), by and through his counsel, Mark L. Cortegiano, Esq., as and for his complaint against the defendant, Wally Shaykhoun, respectfully states and alleges as follows:

## PARTIES

  1. Plaintiff, Federico Pignatelli ("Pignatelli" or "Plaintiff"), is an individual residing in Beverly Hills, California.

  2. Upon information and belief, defendant, Wally Shaykhoun ("Shaykhoun"), is an individual residing in New York, New York.

  3. Upon information and belief, defendant, Immortal Model Management ("Immortal") is a foreign corporation, with a place of business in Slovenia.

## JURISDICTION AND VENUE

  4. This court has subject matter jurisdiction over this case pursuant to 28 U.S.C § 1332(a)(1) because there is diversity of citizenship between the parties and the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs.

5. Venue is proper in the United States District Court for the Southern District of New York pursuant to 28 U.S.C. §1391(b)(1) because defendant, Wally Shaykhoun is a resident of this district.

## BACKGROUND FACTS

6. Plaintiff, Federico Pignatelli, is the owner and CEO of Art and Fashion Group Corporation ("AFGC").

7. AFGC's holdings, include Pier 59 Studios, LLP, ("Pier 59") a world-renowned photography studio, as well as Industry Model Group, LLC, and The Industry Group, U.S.A., LLC (collectively referred to as "Industry Model Management, or "IMM"), a well-respected and renowned model management agency which represents and manages nearly 100 models.

8. Plaintiff is a registered member of the Screen Actors Guild and a respected member of the international model management community.

9. Plaintiff has received a Proclamation from the New York City Mayor's office recognizing his contribution to the production of over 50,000 advertising campaigns over the past 21 years.

10. As the owner and CEO of AFGC, Plaintiff is the public face of AFGC and its holdings and his reputation is important to their continuing business operations and success.

11. In order for models to sign on with IMM, and for the parents of young models to allow their children to sign on with IMM, they must trust and respect the reputation of IMM and Plaintiff.

12. IMM also represents several high-profile photographers and videographers

who work with AFGC and its entities, including Pier 59, and do so in part based on Plaintiff's good reputation in the industry.

13. Immortal is a mother modeling agency.

14. Mother modeling agencies are agencies that find models, develop them and then place the models with management agencies such as IMM, in exchange for a commission.

15. Upon information and belief defendant, Wally Shaykhoun is an owner and officer of Immortal.

16. Upon information and belief, Defendant Shaykhoun's actions as set forth herein were taken in his individual capacity as well as on behalf of Immortal.

17. Plaintiff and Defendant Shaykhoun developed a professional relationship in early 2016 *vis a vis* running their respective companies.

18. Beginning in early 2016, Defendant Shaykhoun began proposing that Plaintiff buy out Immortal, take over its clients and take on Defendant Shaykhoun as an employee of IMM.

19. As the business negotiations between the parties fell apart, Defendant Shaykhoun began engaging in a course of wrongful conduct including harassing employees and talent at IMM and Pier 59 and misrepresenting his involvement and position with IMM and Pier 59.

20. Defendant Shaykhoun began harassing models, and falsely representing to them that he had a stake in Pier 59, and that he and Plaintiff were partners.

21. Additionally, Defendant Shaykhoun began contacting IMM employees threatening to sue them if they did not pay him a 10% referral fee for referring them to

IMM.

22. Defendant Shaykhoun also contacted an IMM employee by the name of Brunella Casella, prior to IMM's hiring her, and told her that Plaintiff was "using her" and would "use her and fire her in 6 months".

23. Defendant Shaykhoun further told Ms. Casella that Plaintiff was poaching models from other agencies and could not be trusted.

24. Defendant Shaykhoun further told Ms. Casella that IMM existed simply to provide prostitutes to Plaintiff.

25. On another occasion, Defendant Shaykhoun further called IMM's Los Angeles office asking to speak to Samuel Ettedry, an employee. When Defendant Shaykhoun was asked who was on the phone, he responded, "Hitler". Upon information and belief, Defendant Shaykhoun said this because he knew that Mr. Ettedry is Jewish.

26. Upon information and belief, Defendant Shaykhoun also knew that the person answering the phone, Viktoria Edelstein, is also Jewish.

27. Upon information and belief, during a subsequent phone call between Defendant Shaykhoun and Samuel Ettedry, wherein Mr. Ettedry inquired into why Defendant Shaykhoun referred to himself as "Hitler", Defendant Shaykhoun threatened Mr. Ettedry saying that he would send people to his home to 'beat him up'.

28. Because of Defendant Shaykhoun's continued wrongful, deceitful and harassing conduct, Plaintiff decided to cut off all business dealings and contact with Defendants.

29. Once Defendant Shaykhoun realized that Plaintiff was no longer interested in doing business with him, Defendant Shaykhoun engaged in a pattern of willful conduct

aimed at destroying Plaintiff's reputation and standing in the modeling industry.

30. Defendant Shaykhoun further engaged in a pattern of defamation, intentionally, recklessly and maliciously, which was designed to cause Plaintiff personal and economic damages and injury.

31. Upon information and belief, while acting in both his personal capacity and as a representative of Immortal, Defendant Shaykhoun disparaged and damaged the personal and business reputation of Plaintiff on or about August 21, 2016 by publishing a statement on a public industry forum for members of "Managers Agents Models Association' a/k/a MAMA" (the "MAMA forum"), which stated in part:

> "Warning all mother agencies to stay the hell way from industry model management LA and NY offices. The owner Federico Pignatelli is a sexual predator. They are also poaching models from mother agency's…. They also hired Brunella Casella the old and career dead model agent from elite models Milan and Woman NYC. You do not want to work with these people there only problems to be had."

A copy of the statement posted on MAMA is annexed hereto as Exhibit "A".

32. MAMA has approximately 1,900 active members.

33. The entire statement which was published on the MAMA forum is false.

34. Defendants timed the defamatory statement to coincide with the launching of the New York office of IMM, and Plaintiff Pignatelli's European trip to market the New York office of IMM.

35. Defendants' actions were undertaken to harm plaintiff Federico Pignatelli's reputation as a well-respected member of the modeling industry.

36. By "warning all mother agencies to stay the hell away from industry model management" Defendants' defamatory statement was made with the intent to injure

5

Plaintiff in his profession.

37. Defendants' defamatory statement relates to the business practices of Plaintiff and was made with the intent to adversely affect confidence of the public and drive away potential clients and potential talent/employees away from his businesses.

38. Defendants' defamatory written statement further impugned on Plaintiff a serious crime of being a "sexual predator".

39. Defendants' defamatory written statement which was published to third parties, MAMA and its members, was made with willful disregard of the true and known facts and was made by Defendants maliciously and intentionally to injure plaintiff, Federico Pignatelli in both his business and personal capacity.

40. After publishing the statement on MAMA, Defendants continued to make disparaging and harassing comments to other consultants of IMM, including, Lisa Phillips.

41. Defendant Shaykhoun sent a litany of enraged texts to Ms. Phillips, stating that Plaintiff would "use" her and "destroy" her and that she must listen to him and not do business with Plaintiff or become involved in his businesses.

42. Defendant Shaykhoun's text messages to Ms. Phillips further stated that for the well-being of her children she should stop doing business with Mr. Pignatelli.

43. Defendants' continued course of harassment will cause irreparable injury to Plaintiff, his businesses and their employees, if it is not stopped.

### AS AND FOR A FIRST CAUSE OF ACTION
**(Libel *Per Se*)**

44. Plaintiff repeats and restates the allegations set forth in paragraphs "1" through "43" above as though fully set forth at length herein.

45. On or about August 21, 2016, Defendants published a statement on a

public industry forum named MAMA, stating in part:

> "Warning all mother agencies to stay the hell way from industry model management LA and NY offices. The owner Federico Pignatelli is a sexual predator. They are also poaching models from mother' agency's. … You do not want to work with these people there only problems to be had."

See Exhibit "A".

46. This statement is undisputedly of and concerning plaintiff, Federico Pignatelli, since it refers to him by name. Persons who read or have read the statement would reasonably understand the statement therein to be a statement of and concerning plaintiff, Federico Pignatelli.

47. When Defendants published the statement on the MAMA forum, they were not authorized to do so and he was not protected by any applicable privilege.

48. The statement published by Defendants is false.

49. Defendants published the defamatory statement with a malicious and reckless disregard for its truth or falsity.

50. Defendants knew or intended, or should have known that the statement tended to expose plaintiff, Federico Pignatelli to public hatred, contempt ridicule, or disgrace and to negatively affect his business operations.

51. The statement portrays Plaintiff as a "sexual predator", and impugns on him a very serious crime.  An allegation of such reprehensible behavior further exposes Plaintiff to public hatred, contempt, ridicule and disgrace and impairs his ability to work in the industry.

52. This statement harmed Plaintiff's reputation by lowering the industry's regard and esteem for him and dissuading clients, employees and talent in the industry from

doing business with Plaintiff.

53. The charges in the statement, damage Plaintiff's business reputation as well as his personal reputation.

54. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered general, presumed, and special damages in an amount to be determined at trial.

55. Defendants' conduct was oppressive and malicious and warrants an award of punitive damages to deter Defendants and others similarly situated from engaging in such conduct in the future.

## AS AND FOR A SECOND CAUSE OF ACTION
### (Injunctive Relief- Permanent Injunction)

56. Plaintiff repeats and restates the allegations set forth in paragraphs "1" through "55" above as though fully set forth at length herein.

57. Defendants, through the actions described above, have engaged in conduct that has threatened and harassed Plaintiff and his employees and has substantially interfered with Plaintiff's business.

58. If Defendant is not enjoined from further harassing and threatening Plaintiff and his employees he will cause irreparable injury to Plaintiff's businesses and their employees.

59. The balancing of the equities favors Plaintiff because Defendants have no legitimate interest in harassing and threatening Plaintiff's employees, and is doing so solely out of malice to interfere with Plaintiff's business.

60. Plaintiff does not have an adequate remedy at law since an award of monetary damages will not protect Plaintiff's employees from Defendants' continued threats and harassment.

**WHEREFORE**, plaintiff demands judgment against the defendants as follows:

a) On the First Cause of Action, damages in favor of plaintiffs and against the defendant in an amount to be determined at trial but not less than $75,000.00 plus interest, costs, disbursement and attorney's fees;

b) On the Second Cause of Action, issuing an injunction permanently enjoining and restraining Defendant and its officers, agents, employees, successors and attorneys and all those acting in concert or participation with him from either directly or indirectly, (1) contacting any and all talent, representatives or employees of Art and Fashion Group Corporation and/or its holdings Pier 59 Studios, LLP, The Industry Group U.S.A., LLC and/or Industry Model Group, LLC; (2) entering or visiting any premises upon which Plaintiff operates a business associated with Art and Fashion Group Corporation and/or its holdings Pier 59 Studios, LLP, The Industry Group U.S.A., LLC and/or Industry Model Group, LLC; (3) allowing any models for whom Immortal is the mother agent to come to or work in Pier 59 Studios; and

c) On all causes of action, such other and further relief as this court deems just proper and equitable, including but not limited to punitive damages where applicable.

Dated: December 23, 2016
      Middle Village, NY

    /s/Mark L. Cortegiano
    Mark L. Cortegiano, Esq.
    65-12 69th Place
    Middle Village, NY 11379
    (718) 894-9500
    Attorney for Plaintiff